O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS A. LAWELLIN, AN INDIVIDUAL; STEVEN D. ROHLIN, AN INDIVIDUAL,<br><br>        Plaintiff,<br><br>   v.<br><br>KEMPER INDEPENDENCE INSURANCE COMPANY, AN ILLINOIS CORPORATION,<br><br>        Defendants. | Case No. EDCV 14-00315-VAP (DTBx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Motion filed on October 20, 2014]** |

Plaintiff-insured Douglas Lawellin[1] ("Lawellin") filed this diversity-based breach of contract case against Defendant-insurer Kemper Independent Insurance Company ("Kemper") because Kemper allegedly failed to defend or indemnify Lawellin in a state court proceeding brought against him by the City of Indian Wells ("Indian

---

[1] Steven Rohlin, to whom Lawellin is married, is also a Plaintiff in this case.  The Court refers to the Plaintiffs interchangeably, even though Rohlin's name is on the insurance policy at issue.

Wells") to abate a public nuisance -- namely that
Lawellin's hedges were too high.

Before the Court is Kemper's Motion for Summary
Judgment, filed under Federal Rule of Civil Procedure
56. (Doc. No. 23.) After considering the papers timely
filed in support of and opposition to the motion; the
exhibits attached to them; and the parties' arguments at
the November 17, 2014 hearing, the Court GRANTS the
motion because Kemper had no duty to defend.

## I.   BACKGROUND

Lawellin and Kemper entered into an insurance
contract in December 2010 (the "Policy"); the Policy
calls for Lawellin to pay premiums in return for both
homeowner's and automotive insurance.  The Policy
contains a section that requires Kemper to defend (and
indemnify) Lawellin from lawsuits arising out of any
"occurrence" that causes "bodily injury," "property
damage," or "personal injury."

Lawellin has lived in Indian Wells, California, since
at least 2010.  In July 2011, Indian Wells passed two
ordinances banning hedges over nine feet tall.  Some
hedges on Lawellin's property were taller than nine feet,
and his neighbor complained to Indian Wells because they

blocked the neighbor's view.[2]  Indian Wells first cited Lawellin for violating the hedge-height ordinance in September 2011.  Lawellin appealed the citation, unsuccessfully, at a November 2011 hearing.  Despite the adverse administrative hearing order Lawellin didn't trim the ficus trees, and received more citations in the months that followed.

Indian Wells upped the ante and sued Lawellin in California Superior Court on September 11, 2012, seeking a warrant to enter Lawellin's property to remove the public nuisance.[3]  ("Warrant Application Case.")  In May 2013 Lawellin asked Kemper to defend him in the Warrant Application Case but Kemper declined, explaining that it had no duty to defend, and in any event Lawellin was not entitled to coverage for a case where he broke the law. Lawellin lost the Warrant Application Case on the merits in December 2013, which also meant he was liable for Indian Wells's attorney's fees -- totalling over $97,000.

Lawellin filed this federal lawsuit on February 2, 2014 (Compl., Doc. No. 1), claiming that Kemper breached its contractual duty to represent him in the Warrant

---

[2] Lawellin's Opposition clarifies that there was no hedge in the traditional sense, but rather a row of 20-foot tall ficus trees.  (Opp'n at 1.)

[3] City of Indian Wells v. Douglas Lawellin, No. 1206444 (Riverside Super. Ct.).

1   Application Case.  He seeks declaratory relief to the

2   effect that Kemper is obligated to defend him in the

3   hedge-height dispute; damages in the amount of the fee

4   award and his own litigation costs; and punitive damages.

5   (Id. ¶¶ 16, 22, 25.)

6

7        Kemper denies liability completely (see Answer ¶ 26,

8   Doc. No. 8), and moved for summary judgment on all claims

9   on October 20, 2014.  In support of its motion, Kemper

10  submitted the following documents and exhibits: a

11  Statement of Uncontroverted Facts ("DSUF," Doc. No. 25);

12  a Compendium of Exhibits ("DCOE," Exs. 1-7); the

13  declaration of Gary Clarke[4]; and a Request for Judicial

14  Notice[5] ("DRJN," Exs. 1-4.)

15

16

17

18  _____

19       [4] Gary Clarke works as a litigation claims examiner
    at Kemper, and reviewed Lawellin's coverage request for
    the insurer.  (Clarke Decl. ¶¶ 1, 2.)

20
21       [5] Kemper requests the Court take judicial notice of
    the following documents: the complaint in the state court
22  case; the declaration and related exhibits of Indian
    Wells Code Enforcement Officer Bruce Pelletier filed in
23  the underlying state court case ("Pelletier Decl."); and
    the minute orders filed in that case -- one entering
24  judgment in Indian Wells's favor and the other awarding
    attorney's fees.  The Court judicially notices the state
25  court's minute orders and the fact that Indian Wells
    filed the state court complaint.  See Fed. R. Evid. 201.
26  The Court will consider the Pelletier Declaration and
    state court complaint, but not as conclusive evidence of
27  any facts (other than that the complaint was filed).
    Pelletier's declaration and the state court complaint are
28  both attached to Kemper's compendium of exhibits, so they
    are otherwise properly before the court.

4

1  Lawellin filed an opposition to Kemper's Motion (Doc.
2  No. 26.), arguing Kemper had a duty to defend Lawellin
3  under the terms of the Policy.  To support his opposition
4  Lawellin submits: a Statement of Genuine Issues in
5  Dispute ("PSID," Doc. No. 27); the declaration of Ernest
6  Franceschi ("Franceschi Decl.," Doc. No.28); and the
7  declaration of Douglas Lawellin ("Lawellin Decl.," Doc.
8  No. 29.)

9

10  **II.  LEGAL STANDARD**

11  A court shall grant a motion for summary judgment
12  when there is no genuine dispute as to any material fact
13  and the moving party is entitled to judgment as a matter
14  of law.  Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty</u>
15  <u>Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving
16  party must show that "under the governing law, there can
17  be but one reasonable conclusion as to the verdict."
18  <u>Anderson</u>, 477 U.S. at 250.

19

20  Generally, the burden is on the moving party to
21  demonstrate that it is entitled to summary judgment.
22  <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998)
23  (citing <u>Anderson</u>, 477 U.S. at 256-57); <u>Retail Clerks</u>
24  <u>Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030,
25  1033 (9th Cir. 1983).  The moving party bears the initial
26  burden of identifying the elements of the claim or
27  defense and evidence that it believes demonstrates the
28

absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has the burden at trial, "that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." Celotex, 477 U.S. at 331.  The burden then shifts to the non-moving party "and requires that party . . . to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial." Id.; Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(a).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id. The burden then shifts to the non-moving party to show that there is a genuine dispute of material fact that must be resolved at trial. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477

U.S. at 252.  <u>See also</u> William W. Schwarzer, A. Wallace
Tashima & James M. Wagstaffe, <u>Federal Civil Procedure</u>
<u>Before Trial</u> § 14:144.

A genuine issue of material fact will exist "if the
evidence is such that a reasonable jury could return a
verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at
248; <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  In
ruling on a motion for summary judgment, a court
construes the evidence in the light most favorable to the
non-moving party.  <u>Scott</u>, 550 U.S. at 380 (2007); <u>Barlow</u>
<u>v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W.</u>
<u>Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809
F.2d 626, 630-31 (9th Cir. 1987).

### III.   FACTS

**A.   Undisputed facts**

No material facts are disputed in this case.[6]

---

[6] The Court further takes judicial notice of the
relevant Indian Wells ordinances:

21.50.051 Hedge height standards.
   (a) Application. . . . [N]o hedge within a
building setback area on a single family residential
lot shall exceed nine (9) feet in height . . . .
   (c) Allowed Height.
   (2) Side and Rear Yards.  [H]edge(s) . . . shall
[not] be allowed to grow over nine (9) feet in height
within the side and rear yard building setback area.
   (e) Conditions that are Nuisances.  It is a
public nuisance . . . to maintian [premises in the
City] in such a manner that is in violation of,
. . . any provisions of this Section.
   (f) Enforcement.  Upon written complaint from
                                    (continued...)

7

**1.   The contract between Lawellin and Kemper**

Lawellin contracted with Kemper on December 17, 2010 for a "Package Plus Policy," to run through December 17, 2011, and which provided, in part, liability coverage to Lawellin.  (DCOE Ex. 6 at 5, 6.)

The Policy provides the terms of its liability coverage:

COVERAGE E - PERSONAL LIABILITY

If a claim is made . . . against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" or because of "personal injury" to which the coverage applies, [Kemper will pay the damages for which the insured is liable], and [p]rovide a defense at [Kemper's] expense . . . .

(DCOE Ex. 6 at 33.)  And it defines the relevant terms:

---

[6](...continued)
. . . a person directly affected by a hedge . . . or upon independent investigation, the Code Enforcement Officer . . . may determine that such hedge . . . is maintained contrary to one or more provisions of this Section and may cause the abatement thereof.

21.90.030 Non-conforming uses and structures.
     (a) General.  Any lawful use of land, buildings, or structures existing . . . at the time . . . any revision is adopted may be continued . . . even if such use does not conform with the provisions of the category in which it is located.

Indian Wells, Cal., Mun. Code title 21, <u>available at</u> qcode.us/codes/indianwells/.

- "Bodily injury" means bodily harm, sickness or disease;
- "Property damage" means physical injury to, destruction of, or loss of use of tangible property;
- "Occurrence" means:
  - (a) an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: (1) "Bodily injury"; or (2) "Property damage"; or
  - (b) an offense . . . which results in "personal injury."
- "Personal injury" means injury arising out of one or more of the following offenses: (a) False arrest, detention or imprisonment, or malicious prosecution; (b) Libel, slander or defamation of character; or (c) Invasion of privacy, wrongful eviction or wrongful entry.

(DCOE Ex. 6 at 19-20.)  In relevant part, the Policy excludes coverage for claims arising out of:

- [Personal] injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured.

(DCOE Ex. 6 at 35-36.)

## 2.   The ordinances and the ficus hedge

Lawellin has owned the residential property located at 45-995 Vista Dorado Drive in Indian Wells since October 2008.  (DCOE Ex. 2 at 7.)   Indian Wells enacted two ordinances in July 2011 that limit (to nine feet) the permissible height of hedges on certain parts of residential property.[7]  (DSUF ¶ 1.)

In response to a neighbor's complaint, Indian Wells inspected Lawellin's property on September 7, 2011 and "noted that the hedge exceeded nine (9) feet in height."[8] (DCOE Ex. 2 ¶ 5.)  After documenting the violation photographically (id.), the inspector mailed Lawellin a "Notice of Violation."  (Id. ¶ 6.)  The inspector went back two weeks later, but there the hedge stood, untrimmed; he then issued an "offense citation" and "mailed a copy of the citation" to Lawellin.  (Id. ¶¶ 7-8.)

Lawellin appealed the citation and appeared at an administrative hearing on November 17, 2011.  (Id.

---

[7] Lawellin asserts that the ordinances were adopted in August 2011, (see PSID ¶ 1), but the difference is immaterial to this case.

[8] This was not the first time the neighbor complained about Lawellin's ficus hedge; Lawellin includes a "citizen complaint form" dated February 1, 2011 (before Indian Wells passed the ordinance) that shows the neighbor's displeasure at the "row of ficus" that were "too high" and were "blocking [the] view." (PSID ¶ 2; Franceschi Decl. at 125.)

¶¶ 9-11.)  Lawellin "did not dispute" that his ficus hedge exceeded nine feet in height at the November 17 hearing.[9]  (DCOE Ex. 2 at 30.)  In a written order, the hearing officer explained that "the sole issue presented by this matter" was whether Lawellin's ficus hedge violated § 21.050.051(c) of Indian Wells's Municipal Code on September 21, 2011.  (DCOE Ex. 2 at 29.)  The hearing officer found that it did, without reference to § 21.90.030 (the "Grandfather Clause").  (Id. at 30.)

Between the date of the hearing and December 7, 2011, Lawellin received one more "Notice of Violation" and two additional offense citations.  (Id. ¶¶ 14-19.)

### 3.   The underlying state court action and Kemper's denial of coverage

After a procedurally defective first attempt to apply for an abatement warrant in state court in April 2012, Indian Wells tried again, filing the Warrant Application Case in California Superior Court on September 11, 2012. (DCOE Ex. 1.)  Indian Wells's complaint in that case asserted violations of §§ 21.50.51(c)(2), (e); sought a warrant to enter Lawellin's property to cut the ficus hedge; and did not mention the Grandfather Clause.  (DCOE Ex. 1 at 6.)  The presiding judge granted Indian Wells's

---

[9] Indeed, Lawellin has never asserted his ficus hedge is less than nine feet high.  (PSID ¶¶ 4, 7.)

1  warrant on November 7, 2013, and on December 19, 2013

2  granted Indian Wells's motion for an attorney's fee

3  award.  (DCOE Exs. 3, 4.)

4

5      Lawellin asked Kemper to defend and indemnify him on

6  May 2, 2013.  (Clarke Decl. ¶ 3.)  The request included a

7  copy of Indian Wells's initial filing from the state

8  court case, which bears the date September 11, 2012.

9  (Clarke Decl. ¶ 3; DCOE Ex. 5.)  Kemper refused to cover

10 Lawellin in the Warrant Application Case, and Clarke sent

11 him a letter stating so on May 9, 2013.  (Clarke Decl.

12 ¶ 5.)  Kemper explained in its declination letter that

13 (1) it had no duty to defend because under the facts of

14 the case there was no "occurrence," "bodly injury,"

15 "property damage," or "personal injury," some combination

16 of which are required to invoke the Policy's coverage;

17 and (2) the Policy specifically excludes the defense of

18 suits for injury arising out of a violation of an

19 ordinance.  (DCOE Ex. 7 at 4.)  Clarke's letter does not

20 mention the Grandfather Clause.  (<u>Id.</u>)

21

22     Gary Clarke, Kemper's claims examiner who handled

23 Lawellin's request, is a lawyer licensed to practice in

24 Oregon and Ohio.  (PSID ¶ 9.)  Lawellin deposed Clarke on

25 August 27, 2014.  (Franceschi Decl. Ex. 2.)  Clarke

26 admitted that he did not conduct any legal research and

27 did not consult with any California-licensed attorneys

28

before denying coverage to Lawellin.  (Id.; PSID ¶¶ 9, 10.)

## IV.  DISCUSSION

**A.  Insurance contract interpretation under California law**

California law controls this insurance dispute, and California appellate court decisions bind federal courts in California where they apply.  See Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 994 (9th Cir. 2007).

An insurance policy is a contract, so the normal rules of contract interpretation apply.  See Safeco Ins. of America v. Robert S., 26 Cal. 4th 758, 762-63 (2001).  Above all, courts should effectuate the mutual intent of the parties.  Bay Cities Paving & Grading, Inc. v. Lawyer's Mutual Ins. Co., 5 Cal. 4th 854, 867 (1993) (citing Cal. Civ. Code § 1636).  If a provision of an insurance policy is ambiguous, that is, it can be given two or more reasonable interpretations, then the "language . . . must be construed in the context of that instrument as a whole, and in the circumstances of that case."  Id.  "Ambiguities are construed against the insurer," because it is usually the policy's drafter. Minkler v. Safeco Ins. Co. of America, 49 Cal. 4th 315, 321 (2010).

An insurer's duty to defend is broad, see Gray v. Zurich Ins. Co., 65 Cal. 2d 263 (1966), and under a personal liability provision that duty attaches if the insurer "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 19 (1995). The insured has the minimal burden to "prove the existence of a potential for coverage," whereas to assert no duty the insurer must show the underlying claim cannot fall within the policy coverage. Delgado v. Interinsurance Exch. of Auto. Club of S. Cal., 47 Cal. 4th 302, 308 (2009) (emphases in original).

The Policy narrowly defines "occurrence" as an accident. (DCOE Ex. 6 at 19.) In the context of California insurance law, the term accident is given its "common law construction," and means "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." Delgado, 47 Cal. 4th at 308; accord Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co., 51 Cal. 2d 558, 563-64 (1959); State Farm Gen. Ins. Co. v. Frake, 197 Cal. App. 4th 568, 579 (2011); David v. Allstate Ins. Co., No. 13-cv-04665-CAS(PLAx), 2014 WL 4215647, at *3 (C.D. Ca. Aug. 25, 2014); Croskey et al., Cal. Prac. Guide: Insurance Litigation, 7I-15(b) (2013). The term is not ambiguous.

1   <u>Delgado</u>, 47 Cal. 4th at 308 ("This common law
2   construction of the term 'accident' becomes part of the
3   policy and precludes an assertion that the term is
4   ambiguous.").

5

6       The objective conduct of the insured determines
7   whether an accident caused the injury complained of, not
8   the insured's subjective state of mind or the kind of the
9   injury.  <u>Fire Ins. Exchange v. Super. Ct.</u>, 181 Cal.
10  App. 4th 388, 392-93 (2010) ("[I]t is well established in
11  California that the term 'accident' refers to the nature
12  of the act giving rise to liability; not to the insured's
13  intent to cause harm.").  Even if the insured's actions
14  were taken in good faith, a duty to defend an ensuing
15  lawsuit does not arise where the "manner in which [the
16  acts] were done, and the objective accomplished occurred
17  as intended by the actor." <u>Delgado</u>, 47 Cal. 4th at
18  311-12; <u>see also</u> <u>Frake</u>, 197 Cal. App. 4th at 580-82
19  (finding no duty to defend insured who struck friend in
20  the testicles, despite argument that contact was
21  privileged hijinks, because the contact was not
22  "unexpected, independent, or unforeseen"); <u>Fire Ins.</u>
23  <u>Exchange</u>, 181 Cal. App. 4th at 396 (explaining in a case
24  about a property owner's encroachment on his neighbor's
25  property: "the [insured]'s mistaken belief in their legal
26  right to build does not transform their intentional act
27  of construction into an accident").

28

**B.   Kemper had no duty to defend under the Policy's terms**

   To win this case, Lawellin has to show the Policy could have potentially provided coverage for the state court case based on what was known to Kemper in May 2013. As such, he must eventually prove that the underlying suit was based on an occurrence that caused property damage or bodily injury.[10]   The Court considers all facts that Kemper knew, or should have known, before it declined coverage.   See Gray, 65 Cal. 2d at 276.

   Kemper had no duty to defend Lawellin in the underlying state court case because the terms of this insurance contract, in this case, are unambiguous.[11]   The Policy only requires Kemper to defend against a third-party lawsuit that arises out of an "occurrence" that causes "property damage" or "bodily injury."   The underlying state court action did not result from an occurrence, as that term is used by California courts

_____

   [10] Lawellin cannot claim Indian Wells's suit was based on personal injury -- the contract limits that type of coverage to personal injury caused by any of a discrete list of intentional torts, none of which are even tangentially related to this case.

   [11] Indeed, some unambiguously favor Lawellin.   For example, the exclusion cited by Kemper does not relieve Kemper of its duty to defend.   See Robert S., 26 Cal. 4th at 763-64 (only exclusions for criminal acts are tolerable to public policy, because generally excluding coverage for "illegal" acts is "so broad as to render the policy's liability coverage practically meaningless").

interpreting insurance contracts, so Kemper had no duty
to defend.[12]

There is no dispute in this case that Lawellin knew
about the hedge-height ordinance, or that he knew his
ficus hedge exceeded the ordinance's limit. (Lawellin
Decl. ¶¶ 3, 4, 5, 6.) It may well have been the case
that Lawellin did not intend to harm his neighbor, but
his subjective intent is irrelevant to whether Kemper had
to pay for his legal defense. See Fire Ins. Exchange,
181 Cal. App. 4th at 392. Instead, the focus is on
Lawellin's conduct, viewed objectively.

At hearing Lawellin's lawyer argued Fire Ins.
Exchange is factually distinct because in that case the
insured intentionally (but with benign intent) built the
encroaching structure, but in this case the ficus hedge
predated Lawellin's ownership of the property and he
merely acquiesced in its presence. But that difference
is illusory; the record evidence shows that Lawellin knew
his omission (not cutting the hedge) would harm his
neighbor or violate the ordinance or both. He received

---

[12] The Court recognizes the internal tension that
arises when personal liability insurance protects those
who act negligently but not those who may act lawfully
(but intentionally), as Lawellin may have acted here.
See Indian Wells Mun. Code § 21.90.030. Unless
California courts take up that issue, however, this Court
is bound by the definition given to the "occurrence" term
in the Policy.

multiple warnings and citations, and knew he was in
continuous violation of Indian Wells's ordinance, yet
failed to act.[13]  That is intentional conduct.  <u>See</u>
Restatement (Second) of Torts § 8A ("The word 'intent'"
means that the actor "believes that the consequences are
substantially certain to result from [the act].").
California courts have repeatedly rejected the notion
that liability coverage extends to intentional conduct.
Because the underlying claim cannot fall within the
Policy's coverage, Kemper had no duty to defend.

## V.  CONCLUSION

The underlying state court action did not arise out
of an "occurrence," as that term is defined by the Policy
and California state courts.  Accordingly, Kemper had no
duty to defend, and its motion for summary judgment is
GRANTED.

**IT IS SO ORDERED.**

Dated:  November 21, 2014

_Virginia A. Phillips_
VIRGINIA A. PHILLIPS
United States District Judge

---

[13] Kemper's duty to defend does not rise or fall with
the legality of Lawellin's conduct.  Even if Lawellin's
hedge was lawful (and the state court found it was not)
he still intended to maintain it at its original height
rather than cut it, and Lawellin's conduct is what
matters.  <u>See Fire Ins. Exchange</u>, 181 Cal. App. 4th at
392–93.